UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MERRIEL E. HOUSMAN, JR., | ) |
| Petitioner, | ) ) ) |
| vs. | )  Case No. 4:13-CV-666 (CEJ) |
| TERRY RUSSELL, | ) ) ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Merriel Housman, Jr., for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a response in opposition, and the issues are fully briefed.

**I.    Procedural Background**

Petitioner, Merriel Housman, Jr., is currently incarcerated at the Eastern Reception Diagnostic and Correctional Center located in Bonne Terre, Missouri, pursuant to the sentence and judgment of the Circuit Court of Cape Girardeau County, Missouri. On April 8, 2009, a jury found petitioner guilty of assault in the first degree and domestic assault in the second degree. Resp. Ex. A. On October 5, 2009, petitioner was sentenced to consecutive terms of twenty years and five years of imprisonment for each offense, respectively. Id.

The Missouri Court of Appeals affirmed petitioner's convictions on October 19, 2010. Resp. Ex. F; State v. Housman, 323 S.W.3d 95 (Mo. Ct. App. 2010). On January 5, 2011, petitioner filed a *pro se* motion for post-conviction relief under Missouri Supreme Court Rule 29.15. Resp. Ex. H. On April 5, 2011, petitioner, through counsel, filed an amended motion under Rule 29.15. Id. An evidentiary hearing was held on July 11, 2011. Resp. Ex. G. On August 29, 2011, the court

denied the motion for post-conviction relief. Resp. Ex. H. at 45-54. Petitioner appealed, and on November 20, 2012 the Missouri Court of Appeals affirmed. Resp. Ex. K.

In the instant § 2254 petition, petitioner asserts three grounds for relief: (1) that the trial court erred in failing to read jury instructions prior to opening statements; (2) that trial counsel was ineffective for failing to call Shannah Housman to testify at trial; and (3) that trial counsel was ineffective for promising the jury during his opening statement that petitioner would testify, and then failing to call petitioner to the stand.

## II. Factual Background

In the summer of 2008, petitioner and his ex-wife Betty were living together, along with their son Merriel III (referred to at trial as "Little Merriel"). Over the Labor Day weekend, petitioner and Betty went on a trip. As they drove home on September 1, petitioner and Betty began to argue. Betty testified that she was talking on the cell phone with a friend, when petitioner twisted her arm and took the phone from her. According to Betty, petitioner stated that when they got home, he was going to shoot her with a bow and arrow. The argument continued when they arrived home. Betty tried to call 9-1-1, but petitioner again took the phone from her and choked her. Betty retrieved a gun from her safe, and tried to leave the house. Little Merriel successfully wrested the gun from her, but during the struggle the gun discharged twice. Betty felt a sudden pain in her back, and saw an arrow sticking out of her shoulder.

Little Merriel testified that he, his wife Shannah, and his daughter were staying at his parents' house over the Labor Day weekend. When his parents arrived home, they were arguing. He saw Betty try to call the police, and petitioner take the phone

from her and hit her in the face. Betty got a gun and her purse, and Little Merriel scuffled with her and took the gun. When he stood up from the struggle with the gun in his hands, he saw petitioner shoot Betty in the back with a bow and arrow.

A police officer who arrived at the scene testified that he found Betty lying on the floor, covered in blood. When the officer asked who was involved in the altercation, petitioner responded that it was between him and Betty. Petitioner was advised of his rights, and gave oral and written statements. Petitioner claimed that Betty and Little Merriel were arguing. He saw Betty go to the safe, and then a short time later he heard two gunshots. He retrieved his bow, saw Betty and Little Merriel fighting over the gun, and shot Betty in the back.

### III. Legal Standard

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision

contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004). "[T]he prisoner has the burden of rebutting the presumption of correctness by clear and convincing evidence." Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

IV. Discussion

    A. Ground One

Petitioner argues that the trial court erred in failing to deliver jury instructions prior to opening statements, and that this error resulted in the denial of due process of law.

After opening statements began, the trial court realized that it had not delivered initial instructions (MAI-CR 3d 300.06, 302.01, and 302.02) to the jury. The court called counsel to the bench, and solicited suggestions on the proper course of action. It was agreed that the court would modify the instruction on opening statements slightly, and would deliver the instructions after both opening statements were complete. Defense counsel did not object. When petitioner raised this issue on direct appeal, the state court found the timing and modification of the instructions did not result in manifest injustice, and affirmed petitioner's convictions. Resp. Ex. F.

The trial court's error was one of state law, and is not a cognizable claim under § 2254. See Wilson v. Corcoran, 131 S.Ct. 13, 16 (2010) (holding that an error of state law is not grounds for federal habeas relief); see also, Clemmons v. Delo, 177 F.3d 680, 685 (8th Cir. 1999) ("Federal habeas relief is not available simply because of a faulty jury instruction."). However, petitioner may be entitled to relief if the error "so infect[ed] the entire trial that the resulting conviction violates due process." Clemmons, 177 F.3d at 685 (citations and quotations omitted). Petitioner has not shown that the minor alteration of the instructions resulted in a denial of due process of law. The timing of the instructions, delivered just after opening statements, cured any prejudice. Furthermore, the omitted portion of the instructions, stating that defense counsel is not required to give an opening statement, was moot, as defense counsel had already delivered his opening statement. Accordingly, the trial court's error did not result in prejudice, and certainly did not rise to the level of a due process violation. Relief on this ground will be denied.

B.  Ground Two

Petitioner next argues that his trial counsel was ineffective for failing to call Shannah Housman as a witness. He argues that Shannah's testimony would have shown that Betty started the argument, and would have supported his claims of self defense and defense of others.

In order to state a claim of ineffective assistance of trial counsel, petitioner must meet the Strickland standard: petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. Strickland, 466 U.S. at 687. To establish prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Federal habeas review of a Strickland claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

Petitioner raised this claim in his post-conviction motion, and the state court held an evidentiary hearing at which petitioner, petitioner's trial counsel, and Shannah Housman testified. Petitioner testified that he had informed counsel that he wished to call Shannah as a witness to show that Betty had started the argument. Shannah testified that on September 1, 2008, Betty was in a bad mood, and began an argument with Little Merriel. Shannah took her daughter into another room, and closed the door. She heard Little Merriel say, "she's got a gun," opened the door, saw Betty with a gun, and closed and locked the door again. She heard gunshots, opened the door, saw

Betty and Little Merriel fighting over the gun, and closed the door again.  She heard Betty say, "he got me, he got me," opened the door, and saw Betty with an arrow in her back.  She did not see petitioner.  Shannah testified that she was not really a witness, and had not wanted to be called as one, because she was in the other room with her daughter and did not see most of what happened.  Trial counsel testified that he attempted to contact Shannah on several occasions prior to trial, without success.  He then subpoenaed her, and spoke with her on the morning of trial.  He decided that her testimony would not be helpful, because she had not witnessed most of the events.  Additionally, counsel was concerned that Shannah's demeanor might hurt petitioner's case.  Resp. Ex. G.

The post-conviction motion court denied petitioner's claim of ineffective assistance.  That court reasonably determined that counsel had a valid strategic reason to not call Shannah.  Shannah did not see petitioner shoot Betty, nor did she see most of the action leading up to that moment.  Her testimony about the argument between Betty and Little Merriel, their struggle over the gun, and the ultimate fact that Betty was shot with an arrow, largely overlapped with Little Merriel's testimony, and would have been cumulative.  Moreover, Shannah was unwilling to be called as a witness, causing counsel to fear that her demeanor on the stand could harm petitioner's case.  The state court reasonably determined that counsel's choice not to call Shannah was not constitutionally deficient performance under Strickland.  Furthermore, because Shannah's testimony would have been cumulative, the state court reasonably found that there was no reasonable probability that the result of the trial would have been different had Shannah testified.

Petitioner suggests that the state court's determination was unreasonable because he presented "credible evidence" that counsel was ineffective. To the extent that petitioner is contesting the post-conviction motion court's findings on credibility of witnesses, those findings are entitled to deference and are amply supported by the record. See Perry v. Kemna, 356 F.3d 880, 885 (8th Cir. 2004). Accordingly, petitioner is not entitled to relief on this ground.

### C. Ground Three

Finally, petitioner contends that trial counsel was ineffective for failing to call petitioner to the stand after informing the jury during his opening statement that petitioner would testify.

During his opening statement, trial counsel repeatedly stated that his client would testify, and petitioner's testimony would show that he acted in defense of himself and others. Counsel summed up the defense's position with the following statement:

> The evidence will be that Mr. Housman will tell you he is sorry for all of this, but he's going to tell you in no uncertain terms, it was absolutely necessary in his mind after seeing what had occured, after seeing his son begging for his life, after hearing two shots ring out and seeing them wrestling over the chair, and in no uncertain terms he thought he was doing the right thing in defending his son, in defending his granddaughter, and in defending himself.

Resp. Ex. A at 117. Despite counsel's statements to the jury that petitioner would testify, counsel never called petitioner to the stand.

At the post-conviction evidentiary hearing, counsel testified that he had intended to call petitioner as a witness, and had thoroughly prepared petitioner for direct examination. However, as the trial progressed, counsel noticed petitioner behaving oddly. Petitioner's actions and demeanor became "erratic," and he would blurt things

out at inappropriate times. Counsel did not recall any specific examples, but remembered that petitioner's conduct was inappropriate and reflected a diminished thought process. He discussed the issue with petitioner and a group of petitioner's friends who were observing the proceedings, and it was agreed that petitioner would not testify. Counsel could not remember petitioner's exact reaction to his advice not to testify, but assumed that petitioner deferred to his advice, as petitioner had generally done throughout their attorney-client relationship. Counsel said that, in retrospect, he should have called petitioner to the stand, because the result "couldn't have been any worse." Resp. Ex. G.

Petitioner testified that he wanted to take the stand, and that he and counsel had agreed that he would be called to testify. He stated that, leading up to the trial, counsel reviewed direct examination questions with him. During the trial, counsel walked by petitioner's seat at the defense table, and told him that he was not going to put him on the stand. Petitioner stated that counsel did not discuss this decision with him. He did not protest, because he assumed that counsel knew what was best. He testified that he had not behaved erratically and that he could not remember blurting things out inappropriately in the courtroom. Resp. Ex. G.

The post-conviction motion court found trial counsel's testimony to be credible, and believed that, at the time of opening statements, counsel intended to call petitioner. Later, after observing petitioner's strange behavior, counsel advised petitioner not to take the stand, and petitioner deferred to this advice. The court concluded that, because petitioner's erratic behavior was unforseeable, counsel was not deficient in informing the jury that his client would testify, and then failing to produce that testimony. The court explained that counsel possessed a valid strategic

reason to advise petitioner against testifying. Finally, the court found that petitioner was not prejudiced by his failure to testify, because his testimony would have been similar to his written statement, which was introduced into evidence by the State. Therefore, there was no reasonable probability the result would have been different had petitioner testified. Resp. Ex. H. The Missouri Court of Appeals deferred to the motion court's credibility findings, and affirmed.

"[F]ailing to fulfill a promise made in an opening statement to call a witness or to present evidence has amounted to ineffective assistance of counsel" in circumstances where no reasonable trial strategy justified counsel's conduct. Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003). Courts have found such conduct especially prejudicial when it is the testimony of the defendant himself that is promised but never delivered:

> When a jury is promised that it will hear the defendant's story from the defendant's own lips, and the defendant then reneges, common sense suggests that the course of trial may be profoundly altered. A broken promise of this magnitude taints both the lawyer who vouchsafed it and the client on whose behalf it was made.

Ouber v. Guarino, 293 F.3d 19, 28 (1st Cir. 2002). However, "failing to present witnesses promised in an opening is not always an error of a constitutional dimension." Williams, 340 F.3d at 671-72. Counsel may be forced to break a promise to the jury or change trial strategies "by the vagaries of the courtroom arena." Hampton v. Leibach, 290 F.Supp.2d 905, 928 (N.D. Ill. 2001).

In this case, counsel's testimony, found to be credible by the state post-conviction motion court, shows that counsel was faced with an unanticipated problem that forced him to renege on his promise to present petitioner's testimony. The testimony given by both counsel and petitioner shows that petitioner willingly deferred

to counsel's advice not to testify. The state court's credibility determinations are entitled to deference, and find support in the record. See Perry v. Kemna, 356 F.3d 880, 885 (8th Cir. 2004). Counsel had a valid strategic reason to advise petitioner against testifying, and that reason was unforseeable at the time of opening statements. This case is therefore distinguishable from those relied upon by petitioner, in which the promises to present evidence, and the subsequent failure to do so, were not justified by unexpected developments. See United States ex rel. Hampton v. Leibach, 347 F.3d 219, 257-58 (7th Cir. 2003) (granting relief on ineffective assistance claim when the failure to present the promised testimony was due to a circumstance foreseeable at the time of opening statements); see also Ouber, 293 F.3d at 27 ("[I]n the absence of unforesseable events forcing a change of strategy, the [decisional] sequence constituted an error of professional judgment."). The state court reasonably concluded that counsel's conduct did not fall below the Strickland standard of reasonableness.

Because the state court's determination under the first prong of Strickland was reasonable, the Court need not address the second part of the Strickland test. See Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000). Relief on this ground will be denied.

V. Conclusion

For the reasons discussed above, the Court finds that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in state court proceedings. 28 U.S.C. § 2254(d). Because petitioner has failed to make

a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.  See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

    A separate judgment in accordance with this Memorandum will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of March, 2014.